## PABST BREWING CO. v. SMITH.

No. 2843.   Opinion Filed September 23, 1913.

(135 Pac. 381.)

1.   **SALES—Delivery—Carriers.**   Ordinarily, a delivery of merchandise to a carrier is a delivery to the consignee, unless there be an agreement to the contrary, or circumstances showing the intention of the parties to be otherwise.

2.   **INTOXICATING LIQUORS—Sales—Recovery of Price.**   Where plaintiff sells defendant intoxicating liquors, with the evident knowledge that such liquors would be resold contrary to law, the contract is against public policy, and no recovery can be had thereon.

3.   **SAME.**   If the seller of liquor in another state actively aids in the evasion of the prohibition laws of this state, into which liquor is shipped, the courts will not sustain an action for the recovery of the price thereof.

(Syllabus by Sharp, C.)

*Error from Superior Court, Oklahoma County;*
*Edward Dewes Oldfield, Judge.*

Action by the Pabst Brewing Company, a corporation, against Lee Smith.   Judgment for defendant, and plaintiff brings error. Affirmed.

*Wilson & Wilson,* for plaintiff in error.

*Ledru Guthrie,* for defendant in error.

Opinion by SHARP, C.   The transaction out of which this action arose was the sale and delivery to defendant, at Kansas City, Mo., on March 28, 1910, of 100 casks of beer. The price of the beer sold was $972.50.   Defendant was given credit for $17.50 cash, $200 commission on sale of 400 casks of beer during the month of March, 1910, and $467.52 on car load of empties returned plaintiff at Milwaukee.   This left a balance due of $287.48.   Defendant answered, denying generally the allegations of plaintiff's petition, and setting up as an affirmative defense that the beer was delivered at Oklahoma City, and there-

fore the contract was executed in this state and subject to the laws thereof. Trial was had to the court, judgment being rendered for the defendant. Motion for a new trial being overruled, plaintiff brings error to this court.

One of the questions to be decided is whether the contract for the sale of the liquor was executed in Missouri or Oklahoma. If the former, the contract was legal; if the latter, it was illegal. Section 3605, Rev. Laws 1910. The only evidence offered at the trial by plaintiff was the deposition of Ernest M. Coleman, chief clerk and creditman of plaintiff company, at Kansas City, Mo., who, it seems, received the orders for the beer in question over the phone, and who O. K.'d them for shipment by plaintiff to defendant. He testified that the liquor was delivered f. o. b. the Santa Fe cars at Kansas City. That the freight from Kansas City to Oklahoma City was paid by defendant was not controverted. Defendant testified that the liquor was to be delivered to him at Oklahoma City. However, after a careful perusal of his evidence, and the terms of the orders and bills of lading, we do not think that such was the case. On the other hand, it is evident that the delivery to defendant actually took place at the time of the delivery to the railroad company for carriage; said railroad company being the agent of defendant in the receipt of the beer.

The exact question was determined in *Williams v. State,* 5 Okla. Cr. 206, 114 Pac. 624. There, as here, the liquor had been delivered to the common carrier in Missouri, to be carried to the consignee in Oklahoma, and it was held that the delivery took place in Missouri, and as the contract was effectuated there, it was lawful under the statutes of that state. The same principle is stated in *Brown v. Wieland,* 116 Iowa, 711, 89 N. W. 17, 61 L. R. A. 417, as follows:

"It is well settled in this state that where a sale of liquor is made outside of the state, though in response to an application secured by an agent in the state, the sale is not invalid on account of the provisions of the section above referred to, and the seller may recover the price of the liquor, although the liquor is shipped by a common carrier into the state, and by the carrier delivered to the purchaser. This is on the theory that the sale is com-

pleted outside of the state, by the delivery of the liquor to the carrier for transportation, and, unless there has been an intent on the part of the seller to assist the buyer in violating the laws of this state, the transaction is not illegal, so far as the laws of the state are concerned."

One of the best reasons for the rules as given, we think, is found in *Westheimer v. Weisman,* 60 Kan. 753, 57 Pac. 969, where it is said:

"The statute can only apply to acts done here. If the defendant in error had gone to St. Joseph, Mo., and bought the whiskey, having it shipped to himself at Leavenworth, it could not be claimed that the seller had violated any statute of Kansas, and the manner of its purchase through an agent in legal effect was the same as if Weisman had gone to St. Joseph and bought there."

Other cases in point are: *Tegler v. Shipman,* 33 Iowa, 194, 11 Am. Rep. 118, and note; *Fred Miller Brewing Co. v. De France,* 90 Iowa, 395, 57 N. W. 959; *Westheimer & Sons v. Habinck,* 131 Iowa, 643, 109 N. W. 189; *Julius Winkelmeyer Brewing Ass'n v. Nipp,* 6 Kan. App. 730, 50 Pac. 956; *McCarty v. Gordon,* 16 Kan. 35; *Feineman v. Sachs,* 33 Kan. 621, 7 Pac. 222, 52 Am. Rep. 547; *Boothby v. Plaisted,* 51 N. H. 436, 12 Am. Rep. 140; *Frankel et al. v. Hillier et al.,* 16 N. D. 387, 113 N. W. 1067, 15 Ann. Cas. 265; *Braunn v. Keally,* 146 Pa. 519, 23 Atl. 389, 28 Am. St. Rep. 811.

Having determined that the contract sued on was made in Missouri, where it was lawful, we must conclude that it is enforceable in the courts of this state, unless by reason of some external fact or circumstance plaintiff has so entangled itself with the illegal purposes of the defendant, in the purchase and sale of the liquor in question, as to be denied any remedy. In other words, plaintiff is entitled to recover the amount sued for, unless it was proven that it actively aided the defendant in the violation of the prohibitory laws of this state, thereby rendering the enforcement of the terms of the contract against public policy. A very similar state of facts, as regards this question, was before the court in *Binswanger v. Stanford et al.,* 28 Okla. 429, 114 Pac. 621, in which the facts were that the defendants, liquor retailers

prior to statehood, had not complied with the laws of the territory, and were therefore conducting their business contrary to law. This condition of affairs was known to the plaintiff, wholesale liquor jobbers of St. Joseph, Mo., through its traveling salesman who received the order. It was said by the court:

"The plaintiffs having sold such liquors to the defendants for the purpose of being retailed, with the evident knowledge that such liquors would be sold contrary to law, the contract being against public policy, no recovery could be had thereon."

Probably with the purpose of circumventing this decision, counsel for plaintiff in error in their brief assert that there is no evidence that either Coleman or Fisher was authorized to act for plaintiff as sales agent in Oklahoma, or that they did so act in the transaction involved in this case, and that knowledge which they may have had of the character of defendant's business would not be binding upon the plaintiff company. We cannot agree with counsel. The evidence shows that Coleman, who received defendant's orders, was creditman and chief clerk for plaintiff company at Kansas City, Mo.; that during January, 1910, he solicited the business of defendant; that he personally took the orders for the beer, over the phone, and O. K.'d them for and on behalf of plaintiff company, and mailed to defendant the 100 separate bills of lading covering the shipments. Nowhere is it denied in the record that plaintiff, through said Coleman as its agent, had knowledge of the illegal character of defendant's business. On the other hand, defendant testified that the liquor was purchased to be sold illegally; that at the time said defendant was engaged in the wholesale beer business at Oklahoma City, and had a government license as such dealer; that Coleman knew this fact, and promised to, and did, aid in the evasion of the prohibition laws of this state. These facts, with others not necessary to mention, so produced before the court on the trial of the case, bring it within the principle referred to in *Binswanger v. Stanford et al., supra.*

It is now the law in practically every state where the question has arisen that if the seller of liquor in one state aids in the evasion of the prohibition laws of another state, into which the

liquor is shipped, the courts of the latter will not aid the recovery of the price thereof. *Feineman et al. v. Sachs,* 33 Kan. 621, 7 Pac. 222, 52 Am. Rep. 547; *Bowman Distilling Co. v. Nutt,* 34 Kan. 724, 10 Pac. 163; *Westheimer v. Weisman,* 60 Kan. 753, 57 Pac. 969; *Corbin v. Houlehan,* 100 Me. 253, 61 Atl. 131, 70 L. R. A. 568; *Taber v. Barton,* 108 Me. 338, 80 Atl. 836; *Banchor v. Mansel,* 47 Me. 58; *Graves v. Johnson,* 156 Mass. 211, 30 N. E. 818, 15 L. R. A. 834, 32 Am. St. Rep. 446, and note; *Wasserboehr v. Morgan,* 168 Mass. 291, 47 N. E. 126; *Bollinger v. Wilson,* 76 Minn, 262, 79 N. W. 111, 77 Am. St. Rep. 646; *Sioux Falls Brewing & Malting Co. v. Kitterman,* 116 Minn. 204, 133 N. W. 468; *P. Schoenhofen Brewing Co. v. Whipple,* 2 Neb. (Unof.) 709, 89 N. W. 751; *Fisher v. Lord,* 63 N. H. 514, 3 Atl. 927; *Hill v. Spear,* 50 N. H. 253, 9 Am. Rep. 205; *Pfeifer & Co. v. Israel* (N. C.) 77 S. E. 421; *Frankel et al. v. Hillier et al.,* 16 N. D. 387, 113 N. W. 1067, 15 Ann. Cas. 265; *Jones et al. v. Yokum,* 24 S. D. 176, 123 N. W. 272; *Aiken v. Blaisdell,* 41 Vt. 655; *Gaylord v. Soragen,* 32 Vt. 110, 76 Am. Dec. 154; *Starace v. Rossi,* 69 Vt. 303, 37 Atl. 1110; *Bacon v. Hunt & Co.,* 72 Vt. 98, 47 Atl. 394; *Kohn v. Melcher* (C. C.) 43 Fed. 641, 10 L. R. A. 439; note, 61 L. R. A. 429-432.

For the reason given, the judgment of the trial court should be affirmed.

By the Court: It is so ordered.