JOHN SEWELL, Plaintiff in Error,

*vs.*

RUFUS P. EATON, Defendant in Error.

ERROR TO THE FOND DU LAC CIRCUIT COURT.

When it is apparent that it is the intention of the vendor to transfer the title, and of the vendee to accept it, a sale of personal property may be complete, although the thing sold remains to be measured, or the exact amount of the price remains to be ascertained.

When the bill of exceptions showed an exception to the ruling of the judge in refusing to allow a letter of the defendant to be read in evidence, but did not set forth the contents of the letter, the exception was unavailing for that reason, because the court could not know whether the contents of the letter were relevant to the issue or not.

The plaintiff in error brought an action of trover in the court below, against the defendant in error, and declared for conversion of 50,000 feet of oak plank, of the value of $500; to which the defendant pleaded the general issue.

The cause came on for trial to a jury at the August term of the circuit court of Fond du Lac county, 1856; when the plaintiff introduced as a witness Orrin R. Potter, who testified that on the 27th day of October, 1855, he sold the plaintiff a quantity of plank lying in several different places. There were about 80,000 feet on the east side of the lake, and about 10,000 feet of stringers, which he sold plaintiff. Plank and stringers were worth $10 or $12 per M. They were manufactured at his mill, within 150 rods of the point where they lay. Plaintiff paid witness on the day of the sale $200; a part in his, witness' note, and a part he paid Fowler, for witness. He, plaintiff, said he would take a delivery of them and pay the $200 then. Thinks there was a bill of sale made of them at the time. Sold to plaintiff the plank he had at the place named

in the writings and delivered them all to him that day. The plaintiff has disposed of some of them; he sold some of them in two or three days after, to the Plank Road Company. He got some on the east side of the lake; Carey got some there, about 35,000 feet, which he bought of plaintiff. Witness saw some 2 or 3 or 4,000 of the plank and stringers from the east side of the lake by Moore's dock, after the sale to the plaintiff. Knew them by the notches he made in them when he used them for the purpose of a railroad. Plaintiff bought them at an estimate. Witness' opinion is they were all to be measured afterwards.

On cross-examination, he says: "Carey got them some time in the middle of the winter. Believes he drew them away after a levy on them by the sheriff, but he bought them before. The sale to the plaintiff was closed at his store. We had not been to examine the plank. Do not recollect how much we estimated, except those on the dock; the estimate on them was 100,000 altogether. He agreed to pay for all there was. He was to give me $8.00 for all. There was no time set in which he was to measure them. I suppose they were to be measured. The plank which have been drawn away have been measured; when the plaintiff sold them he would remove them and thus know how many plank there was—or if he took a notion to measure them. What I call delivery; he gave me up my note, and I gave him a bill of sale.

The bill of sale was produced in evidence and was as follows:

"FOND DU LAC, Oct. 27th, 1855.

"Sold and delivered to John Sewell, all the plank and string-pieces lying on the Waupun plank road; also all of the plank and stringers lying on the bank of the Fond du Lac river in the city of Fond du Lac; also all of the plank lying on a scow in Fond du Lac river, near Bannister's landing; also all of the plank and stringers lying on the dock on the east side of Winnebago, near Allen's landing, for eight dollars per thousand feet. Received on said sale, one note past due, for one hun-

dred and sixteen dollars, the balance to be paid when said plank are measured.

[Signed] O. R. POTTER."

Plaintiff then called several witnesses by whom he proved a conversion by defendant of the plank on the dock at the east side of the lake. He also offered in evidence a letter, written by the defendant, for the purpose of showing that he assumed to own the plank in controversy. The defendant objected to the evidence, and it was rejected by the circuit court, to which opinion and ruling the plaintiff excepted. Plaintiff having rested, the defendant moved the court to non-suit the plaintiff, on the ground that the title to the plank in controversy, did not pass to the plaintiff by virtue of his purchase of said Potter, because said plank were not measured.

And thereupon the circuit court granted the motion, and non-suited the plaintiff; to which opinion and decision of the circuit court judge, the plaintiff, by his counsel, excepted.

*Eldridge & Waite*, for plaintiff in error.

I. There was no legal or valid objection to the admission of the letter referred to in the bill of exceptions.

II. The court erred in non-suiting the plaintiff. The fact that the plank were to be measured did not prevent the title passing.

When the minds of the vendor and vendee meet, and the terms upon which they meet are performed, the title of the property passes and becomes vested in the vendee, and the property immediately is at his risk, and he alone is entitled to the possession. Parker, J., *Dixon vs. Yates*, 5 B. & A.; 27 Eng. C. L. R., 92; 2 Kent's Com., 496–7; *Rugg vs. Merritt*, 11 East., 210; 1 Bou. Inst. 377; *Tarling vs. Baxter*, 6 B & C. 360; 15 Petersdf. Com. Law, 230, 233; *Crawford vs. Smith*, 7 Dana, 59.

If a delivery were necessary, the acts of the parties were sufficient constructive delivery. The delivery of the bill of sale, therein and thereby declaring a sale and " delivery " and the acceptance thereof, is abundantly sufficient. Part payment,

and actual manual removal and sale of part of the property by the vendee, is equally decisive. *Riddle* vs. *Varnam*, 20 Pick., 284.

It is not necessary that there should be an actual manual passing of the property from vendor to vendee. It is enough that the property is in readiness, and that nothing more remains to be done on the part of the vendor. Certainly the facts proved in this case raised a question of fact for the jury, both as to whether there was an actual delivery, and also whether there was an *intention on the part of the vendor to transfer the title, and of the vendee to accept it.* Ante 20, Pick., 280; *Macomber* vs. *Parker*, 13 Pick., 175; *Hinde* vs. *Whebhamer*, 7 East., 538; *Phillips* vs. *Bristoli*, 2 Barn. and Cress., 511.

The entire quantity of plank were sold at so much per thousand, delivered where they were; and a considerable payment made on account thereof. To have done more would have been an idle ceremony. Certainly as between the parties this was enough. A stranger surely could not gainsay it. The balance being to be paid when vendor should measure them, does not alter the case. The title to *all* the plank, more or less, passed at once. The measurement was only a mode of adjusting the accounts between vendor and vendee. It might be done, or it might not. In either event it could not change the transaction. The title changed before the measurement could be made. 20 Pick., above cited; *Crofoot* vs. *Burnell*, 2 Comstock, 258; *Tyler* vs. *Strong*, 21 Barb. 206.

The person who has the absolute or general property in the chattel can maintain trover, although he has never had actual possession, because the general property in personal chattels creates a constructive possession; that is, the right to the chattel draws to it the possession. A *right* to immediate, exclusive possession is sufficient. 3 Bouviers Inst., 668; 2 Saund., 47, note 1; 1 Chit. Pl., 150; 3 Mason, 110.

*Edward S. Bragg*, for defendant in error.

I. Whenever the evidence will not authorize a jury to find

a verdict for plaintiff, or if the court would set it aside, if so found, as contrary to law and the evidence, in such case it is the duty of the court to non-suit. 1 Wend., 376 ; 6 Id., 436 ; Gra. Pr., 311 ; 1 Burrill Pr., 240.

II. Trover will only lie, when the party plaintiff has a complete property, *either general or special*, and actual possession, or a right to the immediate possession, at the time of the alleged conversion. 1 Chitty Pl., 148 ; Wheaton's Sel., 1050.

III. In sales of personal property, if anything remains to be done *to ascertain the quantity, or eaxct amount of the price to be paid*, the title does not pass to the purchaser, so as to enable him to bring trover. Chitty Pl., 147 ; Wheaton's Sel., N. P., 1054 ; Chitty on Cont., (7th Ed.,) 375, *a ;* 41 E. C., 713 ; 6 East, 614 ; *Crawford vs. Smith*, 7 Dana, 59 ; 6 Cow., 250 ; 7 Wend., 404 ; 14 Id., 31 ; 2 Hill, 137 ; 6 Id., 208 ; 1 Denio, 48 ; 5 Id., 379.

*By the Court*, WHITON, C. J. We lay out of the case the error relied upon by the counsel for the plaintiff in error, relating to the refusal of the judge to allow the letter of the defendant to be read in evidence to the jury, as we cannot tell, from the bill of exceptions, what its contents were. The bill of exceptions only informs us, that the plaintiff offered to read in evidence a letter written by the defendant, for the purpose of showing that he assumed to own the plank in controversy ; but whether the letter really did tend to show that fact, we cannot tell. We cannot infer that the letter did tend to show it, and cannot therefore decide that the judge committed an error in rejecting the evidence. We shall confine ourselves, therefore, to the other error alleged, towit: the question of the non-suit for the reason that the testimony of the plaintiff did not show that he was the owner of the plank in controversy.

The bill of exceptions shows that the motion for the non-suit, which the judge sustained, was founded upon a single fact. It appears that the defendant moved for the non-suit "on the ground that the title to the plank in controversy did not pass to the plaintiff by virtue of his purchase of said Potter because said plank were not measured."

This is the sole ground for the non-suit. It appears from the testimony, that the plaintiff purchased from one O. R. Potter, a quantity of plank lying in different places, for the sum of eight dollars per thousand feet, of which those in controversy formed a portion, and took from Potter a written bill of sale of them; that at the time of the purchase, the plaintiff paid Potter $116, toward the plank, in a note which he held against him; that some of the plank had been sold by the plaintiff to other persons after his purchase of them from Potter, and had been delivered and measured. But it did not appear that those which were the subject matter of this suit had been measured, or the quantity ascertained in any way.

We think that the non-suit should not have been granted. Of course we must consider the sale of the plank to the plaintiff to have been *bona fide*, and must limit our inquiry to the single fact that the plank which are the subject of this suit had not been measured.

It is to be observed that the sale to the plaintiff was of a quantity which included those which are the subject of this suit, and that some of them had been delivered and measured.

The counsel for the defendant in error contends that in sales of personal property, if anything remains to be done to ascertain the quantity or exact amount of the price to be paid, the title does not pass; and he has cited numerous authorities in support of his position. We are aware that the authorities upon this subject are not uniform, but those which we cite in support of our position, seem to be founded upon better reason than those which sustain the contrary doctrine; especially so,

when it is apparent, as in this case, that it was the intention of the vendor to transfer the title, and of the vendee to accept it. See *Riddle* vs. *Varnum*, 20 Pick., 280; *Macomber*. vs. *Parker* 13 Id., 175; *Phillips* vs. *Bristol*, 2 Barn & Cres., 511; *Turling* vs. *Baxter*, 6 Id., 360; *Rugg* vs. *Merritt*, 11 East, 210.

The judgment reversed and a new trial granted.